1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF WASHINGTON
2

UNION GOSPEL MISSION OF YAKIMA,    ) Case No. 1:23-cv-3027-MKD
3   WASHINGTON,                        )
                                       ) May 31, 2023
4                      Plaintiff,      )
                                       ) Richland, Washington
5   v.                                 )
                                       ) Video Conference Motion
6   ROBERT FERGUSON, et al.,           ) Hearing
                                       )
7   _____ Defendants. ) Pages 1 to 76

8

9                 BEFORE THE HONORABLE MARY K. DIMKE
                  UNITED STATES DISTRICT COURT JUDGE
10

                            APPEARANCES:
11

For the Plaintiff:          Ryan J. Tucker
12                              Rtucker@adflegal.org
                                Jacob Ethan Reed
13                              Jreed@adflegal.org
                                Alliance Defending Freedom
14                              15100 North 90th Street
                                Scottsdale, AZ 85260
15                              480-444-0020

16                              David Knox DeWolf
                                David@albrechtlawfirm.com
17                              5105 E 3rd Avenue
                                Suite 101
18                              Spokane Valley, WA  99201
                                509-495-1246
19

For the Defendants:         David Ward
20                              David.ward@atg.wa.gov
                                Daniel Jeon
21                              Daniel.jeon@atg.wa.gov
                                Washington State Attorney
22                              General's Office
                                800 Fifth Avenue
23                              Suite 2000
                                Seattle, WA 98104
24                              206-340-6788

25

2

1    Official Court Reporter:        Kimberly J. Allen, CCR #2758
2                                    United States District Courthouse
                                     P.O. Box 685
3                                    Richland, Washington 99352
                                     (509) 943-8175

4    Proceedings reported by mechanical stenography; transcript
     produced by computer-aided transcription.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

**<u>INDEX</u>**

**<u>Proceedings:</u>**                                                              **<u>Page</u>**

Argument on Motion to Dismiss by Mr. Ward                        7

Argument on Motion to Dismiss by Mr. Tucker                      23

Further Argument on Motion to Dismiss by Mr. Ward                37

Further Argument on Motion to Dismiss by Mr. Tucker              42

Further Argument on Motion to Dismiss by Mr. Ward                47

Argument on Preliminary Injunction by Mr. Tucker                49

Argument on Preliminary Injunction by Mr. Ward                  63

Further Argument on Preliminary Injunction by Mr. Tucker        71

Comments by The Court                                           73

**<u>WITNESS INDEX</u>**

**<u>Plaintiff Witness:</u>**                                                        **<u>Page</u>**

None

*****

**<u>Defense Witnesses:</u>**                                                        **<u>Page</u>**

None

KIMBERLY J. ALLEN, CRR, RPR, CSR
OFFICIAL COURT REPORTER

4

1                              **EXHIBITS ADMITTED**

2  **Plaintiff**
   **Number**          **Description**                          **Page**
3                 None

4

5  **Defense**
   **Number**          **Description**                          **Page**
6                 None

7

8                             **GENERAL INDEX**

9                                                               **Page**

10    Reporter's Certificate.............................76

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Call to Order of the Court)

2         THE COURTROOM DEPUTY:  Matter before the Court is *Union*

3    *Gospel of Yakima v. Robert Ferguson, et al.*, 1:23-cv-3027-MKD.

4    Time set for a motion hearing.

09:05:42    5         Counsel, each time you address the Court, if you could

6    please state your name to assist the court reporter in making an

7    accurate record.  And also, when you're not addressing the

8    Court, please ensure that your microphone is muted.

9         Counsel, please state your presence for the Court and

09:05:56   10    record, beginning with counsel for the plaintiff.

11         MR. TUCKER:  Yes.  Ryan Tucker and also have Jacob Reed

12    in the room with me on behalf of Union Gospel Mission and,

13    likewise -- on the Zoom call, David DeWolf is likewise counsel

14    for the plaintiff.

09:06:14   15         THE COURT:  Good morning.

16         MR. TUCKER:  Good morning.

17         MR. DeWOLF:  Good morning.

18         MR. WARD:  And, Your Honor, on behalf of Defendants, the

19    Attorney General Robert Ferguson, Andreta Armstrong, and the

09:06:25   20    Commissioners of the Washington State Human Rights Commission,

21    I'm appearing, David Ward.

22         THE COURT:  Good morning.

23         MR. WARD:  And I also have co-counsel who -- would you

24    like to make your introduction?

09:06:36   25         MR. JEON:  Good morning, Your Honor.  Daniel Jeon for

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    6
*Video Conference Motion Hearing/May 31, 2023*

1    defendants as well.

2        THE COURT:  Good morning.

3        All right, Counsel, today we're here for argument on two

4    separate motions.  First, I would like to take argument on the

09:06:49  5    defendants' motion to dismiss.  As part of your comments, I did

6    issue a text order last week asking the parties to be prepared

7    to discuss the issue of whether a stay would be appropriate

8    while the Ninth Circuit decides the Seattle Pacific University

9    matter.  The way I see Judge Bryan's order is that he dismissed

09:07:09  10    on two grounds; one, the *Younger* abstention, which is not at

11    issue here; but second, on the issue of redressability, which I

12    do think is an issue here.

13        And so I would like the parties to comment on that,

14    including whether they believe that the framing of this

09:07:22  15    complaint, the relief requested is sufficiently different to --

16    as to whether a stay would be appropriate or not, considering

17    those issues.

18        After we take full argument on the motion to dismiss,

19    then we'll turn to the motion for a preliminary injunction,

09:07:39  20    unless -- had the parties anticipated or discussed any other

21    procedure for today?  Mr. Tucker?

22        MR. TUCKER:  No, Your Honor.

23        THE COURT:  All right.  Mr. Ward, does that process work

24    for you?

09:07:50  25        MR. WARD:  Yes, Your Honor.

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    7
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Ward*

 1    THE COURT:  All right.  We'll begin with defendants'

 2  motion to dismiss.  It's defense's motion, so I'll hear from

 3  Mr. Ward first.

 4    MR. WARD:  Thank you, Your Honor.

 5    And before I start, do you have any time limit for the

 6  motions?

 7    THE COURT:  That's a great question.  I should have

 8  started with that.  I have the entire morning booked, and so you

 9  have until noon.  So please frame your comments with knowing I

10  can give you about an hour and a half on each motion.

11    MR. WARD:  Thank you, Your Honor.  I don't anticipate

12  we'll need that much, but it's nice to have that much time.

13    And, Your Honor, again, David Ward appearing for

14  defendants.  I would like to reserve time for rebuttal.  I

15  think, given the time period that you're allowing, ten minutes

16  probably for rebuttal.  But I'd like to begin --

17    THE COURT:  I am not -- I am not particularly

18  formalistic about the timing of motions.  If something comes up

19  in the course of argument, I may hear from each of you two or

20  three times, so I don't have --

21    MR. WARD:  Okay.

22    THE COURT:  -- I don't have a strict argument, response,

23  rebuttable.  We'll see how the argument develops.

24    MR. WARD:  Okay.  Thank you, Your Honor.

25    And to begin with the issue you asked us to be prepared

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Ward*                8

 1    to discuss, whether a stay would be appropriate in this case

 2    until the Ninth Circuit issues its decision in the *Seattle*

 3    *Pacific University v. Ferguson* case, defendants have not

 4    requested a stay as part of their pleadings in this matter, and

09:09:16   5    we don't believe a stay is necessarily warranted in this case,

 6    based on the issues that the Court has raised.

 7         As the Court has recognized, there are some differences

 8    between the *SPU* case and this case.  In particular, that *Younger*

 9    abstention was an issue that Judge Bryan relied upon in granting

09:09:41  10    the motion to dismiss in the *SPU* case.

11         The issue of redressability is up in both cases.  It's

12    an active issue in both cases.  But I don't believe there's

13    certainty that the Ninth Circuit decision will necessarily reach

14    that issue.  There's not a lot of certainty that there will be a

09:10:04  15    simplification of the issues, depending on the Ninth Circuit's

16    decision.

17         And looking at the *Landis* factors for issuing a stay,

18    you know, a key question is whether the case could be

19    simplified, and I don't think we have that kind of certainty

09:10:19  20    here, although I would acknowledge it is a possibility.

21         So defendants are not advocating for a stay here.  We do

22    recognize that the Court has the inherent authority to raise

23    this issue sua sponte, but we would not seek one on our own

24    initiative.

09:10:38  25         So getting to the merits of our motion to dismiss, this

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    9
Video Conference Motion Hearing/May 31, 2023
Argument on Motion to Dismiss by Mr. Ward

1  case was brought out of the blue, from defendants' perspective.

2  Defendants had not had any kind of contact with the Union Gospel

3  Mission of Yakima regarding their religious hiring practices

4  before we received the complaint in this matter.  And defendants

5  have not taken or threatened any enforcement actions against the

6  organization.

7        Under these circumstances, UGM's highly unusual

8  complaint in this matter must be dismissed because it does not

9  present any judiciable claims.

10        As a threshold matter, UGM lacks standing to bring the

11  claims in its complaint because it fails all three prongs that

12  must be satisfied in order to have standing.  First, UGM has not

13  suffered any injury, in fact.  Second, defendants have not

14  caused any of UGM's alleged injuries.  And finally, none of

15  their alleged injuries -- I'm sorry -- their alleged injuries

16  are not redressable by this Court.

17        And it -- in addition to that, there is the ripeness

18  doctrine, and UGM's speculative claims here are just simply not

19  ripe for review.

20        So I'd like to begin with the standing issue.  Standing

21  is obviously a threshold issue for the Court to decide, and it

22  goes to the Court's subject matter jurisdiction.  And UGM has

23  the burden to demonstrate that it satisfies every element of

24  standing for every claim and every form of relief it sought.  As

25  I mentioned before, the three elements of standing are familiar:

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Ward*                          10

1    injury in fact, causation, and redressability.  And injury in

2    fact is what I'd like to start with.

3            An injury in fact has to be, obviously, concrete and

4    particularized, where enforecement is actual or imminent.  It

5    can't be conjectural or hypothetical.  And here, there is no

6    actual enforcement alleged against UGM of the statute or court

7    decision that they are complaining about, nor is enforcement

8    imminent on the part of defendants.  UGM is simply speculating

9    that it could be the target of an action by defendants, such as

10   an investigation or an enforcement action under the Washington

11   Law Against Discrimination, at some point in the future.  But it

12   does not allege that defendants have taken or threatened any

13   kind of action against them, and nor could they.

14           The only thing that UGM points to is a single letter

15   that the Attorney General's office sent to Seattle Pacific

16   University last year.  That letter sought information about the

17   university's hiring practices after the university -- or

18   sorry -- after the Attorney General's office had received

19   hundreds of complaints from members of the public.  The letter

20   requested information from Seattle Pacific University, but there

21   were absolutely no consequences to the university if it declined

22   to provide the information that was requested by the Attorney

23   General's office.

24           The letter that was sent specifically noted, as well,

25   that the Attorney General had not made any determination as to

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    11
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Ward*

1    whether SPU had violated the law, and did not threaten any legal

2    action.

3            Seattle Pacific University did in that case decline to

4    provide the information that had been requested by the Attorney

09:13:56  5    General's office, and instead, they filed a lawsuit against the

6    Attorney General, which, as you know, Judge Bryan dismissed on

7    both redressability and *Younger* abstention grounds.

8            And here as well, UGM's complaint should be dismissed

9    for lack of standing.

09:14:11  10            THE COURT:  Let me ask a couple of questions about the

11    *SPU* matter.  Has the Attorney General's office or any of the

12    other entities involved in this action taken any further steps

13    with respect to the *SPU* matter beyond the letter that was at

14    issue in the litigation?

09:14:26  15            MR. WARD:  No, Your Honor.

16            THE COURT:  All right.  No further action has been taken

17    since that matter was dismissed?

18            MR. WARD:  No, Your Honor.

19            THE COURT:  All right.  And has --

09:14:37  20            MR. WARD:  The --

21            THE COURT:  -- the Attorney General's office or any of

22    the other entities at issue sent any type of similar letters to

23    other entities, based on the Supreme Court's interpretation in

24    *Woods*?

09:14:51  25            MR. WARD:  No, Your Honor.

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Ward*                12

1    THE COURT:  All right.  And, I'm sorry, you indicated

2   you might have been wanting to follow up or clarify on a

3   question I just asked when I started another one.

4        Was there something you wanted to add?

09:15:01   5    MR. WARD:  No, Your Honor.  I was just going to point

6   out that the briefing is ongoing in the *SPU v. Ferguson* case,

7   and our brief is due this -- the Attorney General's office's

8   brief is due this Friday in response to Seattle Pacific

9   University's opening brief.

09:15:21   10    THE COURT:  All right.  Thank you.

11    MR. WARD:  Yes.

12        Now, when we look at injury in fact, the US Supreme

13   Court's decision in 2021 in *Whole Woman's Health v. Jackson* is

14   very instructive.  The Court in that case emphasized that

09:15:39   15   there's no unqualified right to a pre-enforcement review of

16   constitutional claims in federal court.  The Supreme Court noted

17   that in such cases pre-enforcement challenges are frequently

18   brought as defenses to state law claims, if there's an actual

19   case or controversy brought in state court.

09:15:59   20        The Court also emphasized that the mere chilling effect

21   of having a potentially unconstitutional law on the books is not

22   sufficient to confer an injury in fact.  There must be proof of

23   a more concrete injury.

24        In order to maintain a pre-enforcement challenge before

09:16:14   25   the -- a government entity takes action against a party, there

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD     13
Video Conference Motion Hearing/May 31, 2023
Argument on Motion to Dismiss by Mr. Ward

1    has to be a credible threat of prosecution.  That's been

2    emphasized by the US Supreme Court in the *Driehaus* case.  This

3    analysis includes three factors: whether the plaintiffs have

4    articulated a concrete plan to violate the law in question;

09:16:34   5    whether the prosecuting authorities have communicated a specific

6    warning or threat to initiate proceedings; and third, the

7    history of past prosecution or enforcement under the alleged

8    statute.

9         Now, on the first point, we don't have a lot of facts

09:16:51  10    here to determine whether the WLAD, the Washington Law Against

11    Discrimination, even would apply to the Union Gospel Mission's

12    employment practices.  Defendants, as I mentioned before, did

13    not have any knowledge of UGM's hiring practices before this

14    complaint was filed.  They were not under investigation.  They

09:17:13  15    were not subject to any enforcement actions by defendants,

16    particularly with respect to their religious hiring practices.

17         UGM is maintaining in their complaint that they are

18    subject to the WLAD because they have non-ministerial as well as

19    ministerial employees.  However, in the exhibits that are

09:17:38  20    attached to their complaint, which are part of the pleading

21    under Rule 10(c), UGM asserts a very different story.  They

22    assert, in particular in Exhibit 4 to their complaint, that all

23    of their employees are, quote, what is called a minister, by law

24    and judicial decision.  The job descriptions for the two

09:18:00  25    positions that they have put forward here as examples of where

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    14
Video Conference Motion Hearing/May 31, 2023
Argument on Motion to Dismiss by Mr. Ward

1    they are allegedly chilled in hiring, their IT technician and

2    operations assistant positions, similarly those job descriptions

3    indicate that the employees are expected to minister to Union

4    Gospel Mission's clients and others in the Mission.

09:18:25    5        So on the face, we have some conflicting information

6    from UGM itself about whether it employs ministerial or

7    non-ministerial employees.  If they do actually only employ

8    ministerial employees, there's no question that the WLAD would

9    not apply to them, and any effort by the Court in this case to

09:18:47    10    decide matters would simply constitute an advisory opinion

11    because UGM would not be subject to the WLAD plainly under *Woods*

12    or under US Supreme Court precedent.

13        Now, on the second point, to whether there's a credible

14    threat of prosecution, whether the prosecuting authorities have

09:19:04    15    communicated a specific warning or threat to initiate

16    proceedings, as I mentioned before, there is zero evidence or

17    allegation that any of the defendants have communicated such a

18    specific warning or threat to initiate proceedings against UGM.

19    And there are cases where -- you know, cited in the parties'

09:19:26    20    briefs such as the *Yellen* case or *Bonta* case, where there were

21    such specific threats in the form of communications from the

22    government to the parties who were alleging injury, that the

23    law -- that they would -- that the law that was being challenged

24    was applicable to them.

09:19:45    25        No such communication has gone forward to Union Gospel

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    15
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Ward*

1    Mission.  Indeed, even in the *SPU* case, the letter from the

2    Attorney General's office specifically said that there had been

3    no determination of whether they were violating the law.  It was

4    an inquiry to open an investigation based on complaints that

09:20:04  5    were received from many members of the public.  And that, again,

6    was only communication that any of the defendants have issued to

7    anyone in the state regarding the possible application of the

8    WLAD to a religious organization.

9        That is simply not sufficient to meet the second

09:20:23  10    criteria, to show a specific and credible threat of prosecution.

11        On the third point, the history of past prosecution or

12    enforcement of the challenged statute, again, this is very

13    sparse.  As UGM itself acknowledges, there simply is not a

14    history of past prosecution enforcement of the WLAD against

09:20:46  15    religious organizations as employers.

16        Now, UGM suggests that the reason for the sparse

17    enforcement is because the *Woods* decision is only two years old,

18    the decision from the Washington Supreme Court that is

19    essentially what UGM is challenging in this case.  However, UGM

09:21:06  20    entirely ignores that in 2014 the Washington Supreme Court in

21    *Ockletree V. Franciscan Health Systems* also had held that the

22    WLAD's religious employer exemption was unconstitutional as

23    applied to a particular plaintiff.  And in that case what we

24    would regard as the controlling opinion in this case by Justice

09:21:32  25    Wiggins indicated that the WLAD could be applied against a

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    16
Video Conference Motion Hearing/May 31, 2023
Argument on Motion to Dismiss by Mr. Ward

1    religious employer in cases where the job duties of the employee

2    were wholly unrelated to religious -- religious belief or

3    practice.

4         So it's been almost ten years since the Washington

5    Supreme Court has held that the WLAD's religious employer

6    exemption can be, in appropriate cases, applied to religious

7    employers.  And in that history, there is simply no record that

8    defendants, or anyone else, has brought an enforcement action

9    against UGM based on its religious hiring practices.  That,

10   again, would mitigate against finding that there is a credible

11   threat of prosecution, because the history of past prosecution

12   and enforcement is simply not there.

13        When we're looking at cases that address injury in fact,

14   this case is more like the cases we cited in our brief, the

15   *School of Ozarks v. Biden*, for instance, from the Eighth Circuit

16   and *Thomas v. Anchorage Equal Rights Commission*, cases where

17   there simply was not enough to show that there was a credible

18   threat of prosecution against the party who was seeking to bring

19   a pre-enforcement challenge to a statute.

20        Turning to the second prong of standing, causation, in

21   order to have standing, plaintiffs have to show -- a plaintiff

22   must show that their alleged injuries are fairly traceable to

23   the actions of defendants.  Here, there's really no evidence or

24   allegation that defendants have done anything to cause any

25   injury to UGM.

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    17
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Ward*

1    In the complaint, UGM complains primarily about the

2  conduct of third parties towards them, particularly posts that

3  appeared on Reddit, posts that -- or voice-mails that were

4  received by them from third parties.  But defendants are not

09:23:39   5  responsible for that, and the conduct that allegedly chills

6  their speech is not fairly traceable to defendants.

7    At bottom, what UGM is unhappy about in this case is the

8  *Woods* decision from the Washington Supreme Court.  The *Woods*

9  decision goes to some -- you know, the *Woods* decision was an

09:24:01  10  as-applied challenge to the religious employer exemption under

11  the WLAD.  It did not, as UGM suggests, open the door to, I'd

12  say, the parade of horribles that they have put forward in this

13  case.  It was an as-applied challenge to the religious employer

14  exemption.

09:24:24  15    The Washington Supreme Court was very careful in its

16  analysis.  Contrary to what UGM has suggested, the Washington

17  Supreme Court did look to federal constitutional law very

18  carefully in its analysis, and under the facts of that case,

19  they decided that the plaintiff in the case, Matthew Woods,

09:24:45  20  could proceed forward with his case, but they did not rule in

21  his favor.  Instead, the Court said that if Mr. Woods could show

22  that the position he sought at the Seattle Union Gospel Mission

23  was a non-ministerial position -- he was seeking a position as a

24  lawyer in their legal aid clinic -- that he could have a valid

09:25:07  25  claim under the WLAD against Seattle Union Gospel Mission.

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    18
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Ward*

1    And what *Woods* emphasizes is that -- again, this was an

2    as-applied challenge.  The Washington Supreme Court upheld the

3    facial constitutionality of the WLAD's religious employer

4    exemption.  It did not strike it down.  It was a decision that I

09:25:30    5    think will have to be applied in future cases on a case-by-case

6    basis, as one would do with as-applied challenges.

7    UGM's fears that it's going to be subject to enforcement

8    action at this point is simply speculation because they've

9    received no kind of threat from any of the defendants of such an

09:25:49    10    action.

11    But the issues here also get to the point in *Woods* that

12    *Woods* was a state court decision by the highest court of

13    Washington state.  Seattle's Union Gospel Mission sought review

14    of the decision in the US Supreme Court, and the US Supreme

09:26:08    15    Court denied review of that case.  At this point, to the extent

16    that UGM is challenging the *Woods* decision in this case, they

17    cannot ask this Court to review it; only the US Supreme Court

18    can review the *Woods* decision.  This Court cannot overturn the

19    *Woods* decision.

09:26:28    20    UGM tries to suggest that it's not challenging the *Woods*

21    decision, but that assertion is contradicted in its complaint,

22    which repeatedly cites *Woods*' narrowed interpretation of the

23    WLAD as the basis of their alleged injuries, and explicitly

24    requests a declaration that this narrowed interpretation is

09:26:46    25    unconstitutional.

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    19
Video Conference Motion Hearing/May 31, 2023
Argument on Motion to Dismiss by Mr. Ward

1    And these are getting to redressability questions, Your

2  Honor, because any decision by this Court on plaintiff's

3  complaint would not be binding on Washington state courts.

4  *Woods* would still be the applicable -- would still be applicable

09:27:01  5  in Washington state courts, and UGM would still be potentially

6  open, in state courts, to lawsuits by private parties to enforce

7  the WLAD.

8    UGM's complaint here alleged that its First Amendment

9  rights are being chilled by the *Woods* decision.  And to the

09:27:23  10  extent the Court can offer any relief on that, it can't do

11  anything in this action to restrain private parties from

12  enforcing the WLAD, potentially, against Union Gospel Mission.

13  And that defeats redressability in this case because any order

14  by this Court will not relieve UGM of the potential of threat of

09:27:47  15  a WLAD lawsuit.  And UGM itself points to the threat of lawsuits

16  by private parties as one of their alleged injuries, in

17  Paragraph 165 of their complaint.  They also mention this is a

18  potential -- is an injury in their reply brief on the motion to

19  dismiss.

09:28:05  20    Now, there's not a whole lot of case law that considers

21  this kind of issue, but I will note that in the *Whole Woman's*

22  *Health v. Jackson* decision, which we discussed in our brief, and

23  I discussed earlier here, the statute that was being challenged

24  in that case was Texas' law that essentially sought to prevent

09:28:32  25  pre-enforcement review of a statute that restricted abortion in

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Ward*
20

1    the state by giving only private parties the right to enforce

2    the law.  Parties -- the Attorney General of Texas, along with

3    others, was nonetheless sued in that case by people who were

4    challenging -- wanted to challenge the constitutionality of the

09:28:54  5    law.  But the Court held that they could not sue the Attorney

6    General because the Attorney General did not have the authority

7    to enforce the law.

8         But in making this decision, Justice Gorsuch emphasized

9    the point that even if the Attorney General of Texas had the

09:29:10  10   authority to enforce the law -- to enforce the law, any

11   injunction that the Court could issue would only apply to the

12   defendants before the Court.  It would not apply to the private

13   parties who would also be able to bring enforcement actions

14   against people who were seeking abortions or who violated the

09:29:32  15   law.

16        And that goes, I think, again to the issue of

17   redressability here, where the US Supreme Court was recognizing

18   that -- you know, without using the term "redressability," that

19   it's not -- the Court cannot provide effective relief in a case

09:29:47  20   where somebody is challenging a law that private parties are

21   just as well equipped to enforce as government officials.  And,

22   indeed, under Washington state law, the Washington Supreme Court

23   has emphasized that private parties are essential to enforcement

24   of the WLAD and, in fact, serve as private attorney generals

09:30:07  25   [sic] when they bring actions under the WLAD.

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    21
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Ward*

1    So redressability in this case is -- cannot be provided

2    by this Court because there's no ability of this Court to

3    immunize UGM from the alleged injuries they complain about.

4    They complain about the possibility that the WLAD will be

09:30:25  5    enforced against them, and this Court cannot restrain everyone

6    in the state from -- from doing that.

7    So that's, again, where redressability is a key issue in

8    this case.

9    Finally, I would like to turn to the issue of ripeness.

09:30:44  10    Prudential ripeness -- under the prudential ripeness doctrine,

11    courts look to whether a case is fit for review, as well as

12    hardship in withholding a decision in determining whether the

13    Prudential ripeness prong is met.  Two factors are key in

14    determining the fitness of issues of review.  One is that the

09:31:04  15    issues -- are the issues purely legal?  And two, is the

16    challenged action final?

17    Now, here, the issues that are in this case are not

18    purely legal, as UGM suggests.  Instead, as I noted earlier,

19    UGM's own pleadings in this case create, at least at minimum, a

09:31:25  20    contradiction about whether they employ ministerial or

21    non-ministerial employees, or both.  If they only employ

22    ministerial employees, as their exhibits to their complaint

23    suggest, the WLAD doesn't apply at all to them, and anything

24    that this Court would do would simply be an advisory decision --

09:31:45  25    I'm sorry, an advisory opinion.  And so further factual

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    22
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Ward*

1    development would be required in order to resolve that issue.

2         Also here, the challenged action by UGM is not final.

3    To the extent they're -- you know, the action they're

4    challenging is enforcement of the WLAD, there's just no

09:32:08    5    enforcement history at all by defendants against UGM, and the

6    only enforcement -- alleged enforcement action that they point

7    to is a single letter that was sent to Seattle Pacific

8    University, which is also not a final action, because that

9    letter indicated that the Attorney General's office had not made

09:32:28    10    any determination that there was a violation of the law but was

11    simply seeking information.

12         THE COURT:  Isn't one of UGM's arguments that they are

13    entitled as one of the -- the First Amendment rights they are

14    asserting to hire only people of their own religion,

09:32:48    15    co-religionists?  And isn't that a purely legal issue as opposed

16    to the underlying factual inquiry that would be necessary to

17    determine ministerial and non-ministerial employees?  Isn't

18    the -- one of the other arguments they assert, about their

19    entity should have the right to hire only co-religionists, isn't

09:33:05    20    that purely a legal issue?

21         MR. WARD:  Your Honor, that would be purely a legal

22    issue if they actually had, but it's not one that should be

23    reached if they don't have standing to maintain this action in

24    the first place.  That is an issue that really should be teed up

09:33:17    25    in a case where you're not dealing with an employer who you

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    23
Video Conference Motion Hearing/May 31, 2023
Argument on Motion to Dismiss by Mr. Tucker

1    can't even tell whether they have non-ministerial employees,

2    because otherwise, if they only employed ministerial employees,

3    there's no need to reach the co-religionist issue at all because

4    they would not be subject to the WLAD.

09:33:37    5    So in closing, Your Honor, I would like to urge the

6    Court to dismiss UGM's complaint with prejudice for lack of

7    standing or lack of ripeness.  And I would also just echo what

8    the Ninth Circuit said in *Thomas v. Anchorage Equal Rights*

9    *Commission*, that this is a case in search of controversy, and

09:34:06    10    it's not judiciable, for the reasons we've discussed in our

11    briefing and here today.

12    Thank you, Your Honor.

13    THE COURT:  Thank you.

14    All right.  Mr. Tucker, are you making the arguments on

09:34:18    15    behalf of the plaintiffs?

16    MR. TUCKER:  (Inaudible.)

17    THE COURT:  Oh, Mr. Tucker, I think you might be on

18    mute, sir.

19    MR. TUCKER:  I'm terribly sorry, Your Honor.

09:34:27    20    THE COURT:  That's all right.

21    MR. TUCKER:  Yes, the answer to the question is "yes."

22    Ryan Tucker on behalf of the Union Gospel Mission of

23    Yakima.

24    I'll start first with the Court's question that it posed

09:34:42    25    both last week and then also this morning as to whether or not

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    24
Video Conference Motion Hearing/May 31, 2023
Argument on Motion to Dismiss by Mr. Tucker

1   the case should be stayed pending the outcome in *SPU v.*

2   *Ferguson.*  I'm pleased to report, at least initially, we agree.

3   We agree with the defense that the case should not, in fact, be

4   stayed, but here's why.  There's really three different, I

09:35:01   5   think, reasons why that is the case.

6        First is the fact that the Mission continues to have

7   ongoing harm.  It's chilling its speech.  It has a religious

8   hiring statement that it would like to post.  It has two

9   non-ministerial positions.

09:35:19   10        And, Your Honor, if I could just pause for a moment, I

11   think there's some feedback.  I don't know if that's on -- I

12   just want to make sure Your Honor can hear me.

13        THE COURT:  I'm not having any feedback issue.

14        Is -- I just want to confirm:  Is everyone else muted?

09:35:32   15   Because sometimes that can happen when someone is not muted.

16        MR. TUCKER:  Okay.

17        THE COURT:  Okay.  All right.  Is the feedback

18   distracting to you, Mr. Tucker?

19        MR. TUCKER:  No, I --

09:35:40   20        THE COURT:  Okay.

21        MR. TUCKER:  No, I can manage.

22        THE COURT:  Okay.

23        MR. TUCKER:  So, I'm sorry, Your Honor, going back,

24   there's three different reasons.  First is the continuing,

09:35:49   25   ongoing harm that the Mission has.  It's chilling its speech.

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    25
Video Conference Motion Hearing/May 31, 2023
Argument on Motion to Dismiss by Mr. Tucker

1    It has a hiring statement.  It has two non-ministerial positions

2    that it would like to post, two that it would like to fill by

3    July 1st, this fiscal year.  And in order to do that, it

4    necessarily needs relief from this Court.

09:36:10    5        And in addition to those two non-ministerial employees,

6    the Mission also has approximately four dozen positions

7    throughout the year that it needs to -- to hire.  Excuse me.

8        So I think just from a practical perspective -- sorry,

9    Your Honor -- we have a case that's pending at the Ninth.  We

09:36:40    10    don't know when the Ninth is actually going to issue its

11    decision.  And so the Mission is simply not in a position to be

12    able to wait a year, let alone months, or even weeks, for a

13    final determination from the Ninth.  So the ongoing harm is the

14    first reason why.

09:36:58    15        The second one is the fact that the claims and the facts

16    in the *SPU* case are -- are different.  If you look at the

17    underlying complaint brought by Seattle Pacific, they bring

18    claims of retaliation, targeting, hostility.  Those are claims

19    that -- that we do not allege in this lawsuit.  They also

09:37:19    20    underscore the need for declaratory relief relative to the

21    ministerial exception.  The ministerial exception claims are not

22    claims that we have brought also in this lawsuit.  The

23    ministerial exception claims, though, however, I think were at

24    least part and parcel to the -- to the reason why the -- the

09:37:42    25    judge, Judge Bryan, chose to dismiss that case on redressability

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD     26
Video Conference Motion Hearing/May 31, 2023
Argument on Motion to Dismiss by Mr. Tucker

1  grounds.  He looked at it and said, "Well, wait a second.  I'm

2  going to have to go through and potentially parse through all of

3  these different positions to determine whether or not they're

4  ministers or not."

09:37:57  5       We're not asking for that here.  There's no need for the

6  Court to do so.

7       The third reason why the -- the case, I think, should

8  not be stayed, it has to do with what Judge Bryan found really

9  to be the most important reason why that case was dismissed, and

09:38:17  10  that deals with the abstention issues.  On the one hand, the

11  defendants are saying, "Look, we sent a letter.  Because of that

12  letter, the ongoing quasi-criminal investigation, SPU can't have

13  its day in court because of abstention grounds."  So the one

14  hand they're saying that.  They're saying abstention requires

09:38:42  15  dismissal there.  And then they come over here to this case and

16  say, "Well, guess what?  You guys didn't get a letter, and so

17  there's no case or controversy."

18       Under the defendants' theory, Seattle -- the Union

19  Gospel Mission of Yakima could never have its day in court.  And

09:38:57  20  so I think, you know, that issue alone again underscores why not

21  just the fact that the stay would be inappropriate but also

22  underscores the rights that -- that Yakima has to being in court

23  here today.

24       Now, let me sort of transition here to some of the

09:39:19  25  arguments that opposing counsel referenced, and let me sort of

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD     27
Video Conference Motion Hearing/May 31, 2023
Argument on Motion to Dismiss by Mr. Tucker

1   frame this with this overarching point, and that is the fact

2   that this case is about whether, really, the state can force a

3   religious organization to hire employees who do not share its

4   religious beliefs.  The Union Gospel Mission of Yakima believes

5   the answer to that question is certainly "no," as doing so would

6   not only undermine its autonomy, but would actually put into

7   question its continued viability.

8          It was started in 1936.  It was founded as a Christian

9   ministry to serve the less fortunate and to spread its religious

10  beliefs and ideals in that community.  Because the Mission is a

11  religious organization, just like a house of worship, it

12  maintains an internal community of like-minded believers who

13  agree with and adhere to its religious beliefs, so that the

14  Mission is able to effectively and accurately further its

15  ministry work.

16         Yet, the Washington Law Against Discrimination, WLAD,

17  impedes the Mission's ability to do just that by penalizing the

18  Mission for employing only those who are completely on board

19  with religious beliefs.  This isn't hypothetical.  It's

20  concrete.  In fact, the Attorney General made that very clear,

21  that the First Amendment does not protect non-ministerial

22  employees.  So that's why the Mission brought this lawsuit,

23  that's why the Mission paused hiring for its two open

24  non-ministerial positions, again, positions it hopes to fill by

25  July 1st, and withheld its speech on those topics, all to avoid

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    28
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Tucker*

1    WLAD enforcement and penalties.

2            As opposing counsel referenced, there are -- turning to

3    the standing arguments, of course, there are three standing

4    elements.  The *Susan B. Anthony List* outlines those well, the

09:41:17    5    Supreme Court decision from 2014, the first being injury in

6    fact.  And when we look at injury in fact, there are three

7    elements below that.  The first one:  Whether the plaintiff has

8    alleged an intention to engage in a course of conduct arguably

9    affected the constitutional interest.  Defendants don't really

09:41:35    10    challenge that one.

11            They also don't really challenge the -- whether the

12    conduct is arguably prescribed by the law being challenged.  So

13    again, that one is not really at issue.

14            But I would say, as an aside, because I do think this is

09:41:48    15    a very important admission by the Attorney General in the *SPU*

16    case, if you look at Page 17 of their motion to dismiss, they

17    say very clearly that the First Amendment clearly protects, it

18    goes on to say, employment practices with respect to its

19    ministers, but those protections do not extend to discrimination

09:42:08    20    against, and it goes on, non-ministerial employees whom the

21    WLAD's prohibition of employment discrimination on the basis of

22    sexual orientation applies.

23            So it's very clear that to the extent you have

24    co-religionists, people that do not classify as ministers, that

09:42:28    25    you are in trouble and in potential violation of the WLAD.

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    29
Video Conference Motion Hearing/May 31, 2023
Argument on Motion to Dismiss by Mr. Tucker

1    The element under injury in fact that opposing counsel

2    focused primarily on, and where we have the greatest

3    disagreement, is this credible threat of enforcement.  And as

4    Mr. Ward mentioned, you look at the *Thomas* factors, and when

09:42:49    5    analyzing those *Thomas* factors, the first is whether or not

6    there's a concrete plan -- whether the plaintiff has alleged a

7    concrete plan to violate the law.  This one, again, is not at

8    issue.  We have alleged that in our complaint, that we intend to

9    resume hiring on Indeed.com, that we would like to continue

09:43:09    10    hiring only co-religionists for its IT technician and operation

11    assistant, and, really, for other non-ministerial positions as

12    well, but for the WLAD and its enforcement.

13    The second one that counsel spent some time on was

14    whether or not there's a specific warning or threat.  And I

09:43:31    15    really want to emphasize to the Court the importance of some

16    recent Ninth Circuit case law that I think is directly on point.

17    One is the *Tingly* decision from 2022.  Its standing analysis is

18    on point here.  And there the Court said you don't need a

19    specific threat to the Mission.  I don't have to receive a

09:43:54    20    letter from the Attorney General or from the Commission in order

21    to be able to meet this -- this element.  In fact, very

22    importantly, *Tingly,* and other Ninth Circuit cases, says that

23    the failure to disavow is -- is enough.  If you read *Tingly*, it

24    says:  We have interpreted the government's failure to disavow

09:44:17    25    enforcement of the law as weighing in favor of standing.

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    30
Video Conference Motion Hearing/May 31, 2023
Argument on Motion to Dismiss by Mr. Tucker

1    We -- we see that also in the *Italian Colors* case.  We

2    see that also in *Cal Trucking*, which is another important Ninth

3    Circuit decision, where there was an opportunity during the

4    hearing itself for opposing counsel to disavow.  And the failure

09:44:40   5    to disavow meant that there really -- there is a case in

6    controversy.

7    So I think here the main point is the defendants really

8    have to answer the question:  Either the Union Gospel Mission

9    can hire those who it wants to hire or it can't.  If defendants

09:44:58   10    say, "Well, we are not sure, it's unclear," then we get to stay

11    in court.  If the defendants want to say, "Sure, go ahead, you

12    can hire who you want," well, then I admit that we wouldn't have

13    a case or controversy.  But we've had this case on file for two

14    months, and I have not heard that to this point.

09:45:16   15    Past enforcement, this third *Thomas* factor, I think is

16    the least important as far as when you -- when you weigh them.

17    Here we still have -- have checked the box, if you will, on this

18    one.  The issue of -- or the history of past enforcement carries

19    little weight when the challenged law is either new or even, in

09:45:39   20    this instance, when there has been little enforcement or a

21    recent change to its enforcement.  The *Tingly* case again

22    discusses that.

23    THE COURT:  What about -- what about defendants'

24    argument that the change in law really isn't all that recent,

09:45:53   25    that the Court signaled its understanding of the law or its

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*     31
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Tucker*

1    interpretation of the law back in *Ockletree* in 2014, so the

2    change really isn't that recent, so the fact that in nine years

3    there's been no enforcement of the way that plaintiffs are

4    concerned about, with the exception of one letter sent to SPU,

09:46:12    5    so how do you respond to that?

6         MR. TUCKER:  A few different responses.  First off, Your

7    Honor, I respectfully disagree with the, I think, opposing

8    side's view of *Ockletree*.  Of course, that is not shocking,

9    because I think there's law review articles trying to figure out

09:46:27    10    exactly what that case meant.  That was a very fractured

11    decision, and even the concurring opinion that's cited by

12    opposing counsel is -- I don't agree that that is actually what

13    that case held.

14         But putting aside our disagreement as to what *Ockletree*

09:46:44    15    actually says in 2014, the reality is we have ongoing harm now,

16    and we have enforcement now, by government officials

17    interpreting the law now to provide that -- that religious

18    organizations, like the Mission, no longer have the ability to

19    hire non-ministerial employees.  That -- that enforcement did

09:47:08    20    not happen until this past year, after the Attorney General

21    decided to go after a similarly situated religious organization

22    like Seattle Pacific.

23         And, again, if you look at -- you know, the fact is we

24    don't need an actual letter directed to us.  The fact that past

09:47:31    25    enforcement -- again, it's not even necessary to have past

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD          32
Video Conference Motion Hearing/May 31, 2023
Argument on Motion to Dismiss by Mr. Tucker

1    enforcement at all, but even the fact that they've gone after a

2    similarly situated entity, if you look at the *Lopez* case, a

3    Ninth Circuit decision from 2010 that we cite in our papers, it

4    says that as well.

5         Moving to the second, *SBA List* factor, causation and

6    traceability, I think the main point there, Your Honor, just

7    sort of jump to the chase on that, is the causation.  Causation

8    is met when the defendants have -- have authority to -- to

9    enforce the law.

10        Here, you know, we have sued the defendants that have

11   that ability.  When you look at, in 1983 actions, it's the state

12   official's power to enforce the challenged provision that

13   demonstrates that requisite causal connection for standing

14   purposes.  That's the *Planned Parenthood* case out of the Ninth

15   Circuit in 2004.

16        You know, and, again, the real injury here is the

17   enforcement of the WLAD, not the actions of third parties.  We

18   do include what is going on on the outside, the fact that we

19   have, in fact, been the target of inquiries from others that do

20   not care for our religious beliefs.  They have had Reddit

21   exchanges; we've received voice-mails.  That's really color to

22   further underscore the concern.  But if you go back and look

23   even at the *Tingly* case again, you've got a Christian counselor

24   who didn't have any of that.  There he was chilling, and there

25   was the failure by the defendants to disavow that led to -- to

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*                   33
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Tucker*

1    standing.

2         The third component on *SBA List* is redressability.  This

3    one, really the burden, in fact, is -- on us is -- is minimal, I

4    would say, or modest when you look at court precedent.  There,

09:49:40    5    in the *Lujan* decision, the Supreme Court case a few years back,

6    said that if the plaintiff is an object of the law, there's

7    ordinarily little question that the action or inaction caused

8    him injury, and then a judgment preventing or requiring the

9    action will redress it.

09:49:55    10        I think the main argument that defendants make here is,

11   well, wait a second, look, these guys simply want to relitigate

12   *Woods*.  No, Your Honor, that -- the distinction here is -- you

13   know, we're not asking the Court to declare that the Washington

14   Supreme Court decision in *Woods*, that they erred in

09:50:17    15   interpretation of the state constitution.

16        What we're asking for here is to declare that the WLAD,

17   as it sits today, and enforcement of that law by Washington

18   state officials, infringes on the federal Constitution.  And I

19   think importantly, if you go back and look, yes, there was a

09:50:38    20   cert denial in that case, but I think the statement by Justice

21   Alito actually really crystallizes, in fact, how we ended up

22   here today.  You know, Justice Alito says that the Supreme

23   Court -- the Washington Supreme Court's decision there to

24   narrowly construe the Washington religious exemption (inaudible)

09:51:00    25   avoid the conflict with the state constitution may have created

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Tucker*

34

1    a conflict with the federal Constitution.  That's exactly why

2    we're here today.

3           So we're not here to have a second bite at the apple at

4    *Woods*.  We're here because of a federal constitutional issue.

09:51:15  5    And if you think about it, too, in the context -- let's say that

6    the legislature, for example, had simply amended the WLAD this

7    last year.  I wouldn't be suing the Washington legislature as a

8    result.  Instead, what you would do is you would sue those who

9    are actually enforcing it.

09:51:31  10           Well, that's exactly what we've done here.  We've sued

11    the government enforcement officials that can pursue complaints

12    against the Mission itself.

13           You know, there's also -- there was some concern about,

14    you know, whether or not, you know, relief relative to some

09:51:56  15    injury was enough.  If you look at the *Larson* case, again, out

16    of the Ninth Circuit, 450 -- or, I'm sorry, the *Larson* case out

17    of the United States Supreme Court held that an injunction that

18    relieved some injury is sufficient in the redressability

19    analysis.  The *Wolfson* case we also cite, Ninth Circuit, also

09:52:17  20    bolsters that argument, and I will rely on that briefing and not

21    regurgitate it ad nauseam.

22           Before I turn briefly to ripeness, you know, again,

23    there were a couple points that opposing counsel made.  There

24    was a reference to *Whole Woman's Health*, a US Supreme Court

09:52:40  25    decision.  You know, there I think it's important to recognize

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD     35
Video Conference Motion Hearing/May 31, 2023
Argument on Motion to Dismiss by Mr. Tucker

1    that the Court there, in looking at the standing analysis, you

2    know, held that there was no case or controversy as to certain

3    defendants.  Standing was appropriate (inaudible) some

4    defendants, but standing was not appropriate against the state

5    court judge and the state court clerk.  Here we have the right

6    enforcement officials.  It's really apples and oranges to our

7    particular situation.

8         Counsel also referenced, I think in passing, the *Yellen*

9    decision.  Again, I -- I go back to the well on this.  A failure

10   to disavow means that we have the right to be here in court.

11   The *Yellen* case actually says that directly on Page 850, citing

12   again *Cal Trucking*, which is another Ninth Circuit decision.  So

13   if you look at really the Ninth Circuit case law in the last

14   36 months, 48 months, it really spells out exactly why we have

15   standing in this particular case.

16        Now, as to ripeness, I agree again with opposing

17   counsel's comment that -- you know, and Your Honor's question

18   relative to, well, if I'm only asked to comment whether or not

19   we've got a right to hire co-religionists, isn't that a legal

20   issue, it is.  And this is a purely legal matter.  There was a

21   reference to the fact that, well, wait a second, if you look at

22   their exhibits, they're being unclear about the fact that

23   they -- who they call ministers and who they don't.

24        Well, obviously, this Mission is a Christian ministry.

25   We cite several paragraphs in our complaint talking about the

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    36
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Motion to Dismiss by Mr. Tucker*

1    fact that we believe, and that Yakima Mission believes, that

2    it's called by Christ to share the gospel, and so they are on a

3    mission to share the gospel of Christ with others.  In that

4    sense, they do consider themselves to be ministers in a biblical

09:54:47    5    sense, but there's a difference between being a minister in the

6    biblical sense and a minister for purposes of the law, and we

7    have readily admitted that there are certain positions at

8    Yakima, including the very two that we need to hire within 30

9    days, that are non-ministerial positions.  Those are positions

09:55:05    10    that -- that look -- that are -- that are inward in nature,

11    meaning there's an importance to being able to maintain a

12    framework of like-minded individuals in a religious institution.

13        If you think about an individual like Mr. Woods, even in

14    the Seattle case, who says, "I want to come into this religious

09:55:30    15    organization, and I want to change your belief system because I

16    disagree with it," that will unravel the very fabric that binds

17    that institution together.  And, again, Justice Alito, in the

18    statement denying that cert petition -- and the reason that case

19    went back down is because the Supreme Court looked at it and

09:55:53    20    said, "Not now"; the procedural posture.  But I think the

21    warning that Justice Alito gave there, the very fact that if

22    religious organizations don't have the right to -- to bring on,

23    to hire those that are like-minded, then that will completely

24    destroy religious organizations in toto across the board.

09:56:14    25        I'm going to hold -- I have additional thoughts on that,

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    37
Video Conference Motion Hearing/May 31, 2023
Further Argument on Motion to Dismiss by Mr. Ward

 1    but they're more merits-based, and so I think with that, if Your

 2    Honor doesn't have any questions, I can -- I can rest on the

 3    briefing that we have relative to the motion to dismiss.

 4            THE COURT:  All right.  I do not at this time.

 5            I'll turn back to Mr. Ward.

 6            MR. WARD:  (Inaudible.)

 7            THE COURT:  Oh, you're on mute, Mr. Ward.

 8            MR. WARD:  Sorry.  I knew I would do that.

 9            THE COURT:  That's all right.

10            MR. WARD:  Thank you, Your Honor.

11            I would like to make a few points in response, in

12    rebuttal.  First, I appreciate that Your Honor brought up the

13    *Ockletree* case, because it was literally ignored by the briefing

14    of plaintiffs in this case, and it is a decision that has been

15    in effect for nine years, and there has been no enforcement

16    authority actions that they can point to under that.

17            UGM seems to suggest that the case law says that

18    basically they have standing regardless of any -- you know,

19    having received no communication from us, having received --

20    having such a sparse history of enforcement.  But that's not

21    simply what the cases stand for.  I mean, the *Tingly* case, for

22    instance, concerned a new statute that was only on the books for

23    a few months, that it had clearly applied to the party who was

24    bringing the challenge.

25            Here, we have court decisions from the Washington

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    38
Video Conference Motion Hearing/May 31, 2023
Further Argument on Motion to Dismiss by Mr. Ward

1    Supreme Court going back to 2014 that have held that religious

2    employers, under proper circumstances, may be subject to

3    as-applied challenges under the WLAD and no history of

4    enforcement.  That is a key distinction.  I mean, a key

09:58:12    5    distinction as well in the *Yellen* and *Cal Trucking* cases that

6    were cited by UGM is that in those cases, the defendants had

7    actually -- the state officials had actually issued letters to

8    the parties -- I'm sorry, the people challenging the law,

9    indicating that the law would be enforced against them or they

09:58:33    10    interpreted the law as being, you know, enforced against them.

11    And we simply don't have that here with UGM.  We don't even have

12    that with SPU.  I mean, in the *SPU* case, the Attorney General's

13    letter simply said that it was opening an inquiry based on

14    complaints, and that it made no conclusion that there was a

09:58:52    15    violation of law.

16        On the issue of, you know, reaching the co-religionist

17    issues in this case, I will point out, I mean, in *Woods* --

18        THE COURT:  Mr. Ward, before --

19        MR. WARD:  Please.

09:59:05    20        THE COURT:  -- before you move on, and I have not --

21    obviously, I think only one brief has been filed with respect to

22    the *SPU* matter.  It's my understanding Judge Bryan did not

23    decide but assumed for the purposes of the decision in that case

24    that the first two factors of standing were met.

09:59:23    25        Is that an issue as to the briefing that's taking place

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD      39
Video Conference Motion Hearing/May 31, 2023
Further Argument on Motion to Dismiss by Mr. Ward

1    before the Ninth Circuit right now?

2         MR. WARD:  Your Honor, in their opening brief, Seattle

3    Pacific University did brief the injury-in-fact issue.

4         THE COURT:  Okay.

5         MR. WARD:  But we have not filed our response brief yet.

6         THE COURT:  All right.  Well, I --

7         MR. WARD:  I don't recall if there was causation.  Yeah.

8         THE COURT:  Since it's due on Friday, I expected you

9    might know whether there's going to be some discussion of injury

10   in fact.

11        MR. WARD:  Yes, Your Honor.  I can disclose that there

12   will be some discussion of that, yes.

13        THE COURT:  Okay.  I'm just trying to analyze what

14   issues are likely to be before the Ninth Circuit that are

15   substantially related to the issues here, because one of the

16   issues is:  Is the letter that SPU sent, if that is not an

17   injury in fact for SPU, I don't see how it would be for UGM.

18   And so that is one of the issues I'm analyzing, is the

19   likelihood that that particular issue is before the Ninth

20   Circuit in terms of deciding about whether it's appropriate to

21   proceed now or see what the Ninth Circuit has to say about that

22   particular issue, given the context.

23        So thank you for the answer.

24        MR. WARD:  Okay.  Yes, Your Honor.

25        On a few other points to address, on redressability, the

09:59:36   5
09:59:47   10
09:59:57   15
10:00:17   20
10:00:27   25

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    40
*Video Conference Motion Hearing/May 31, 2023*
*Further Argument on Motion to Dismiss by Mr. Ward*

1    ability of private parties to sue to enforce the WLAD, in

2    addition to the defendants in this case, is a key distinction

3    between this case and the *Wolfson* case that UGM has pointed to.

4    In the *Wolfson* case, the Ninth Circuit held that a challenged

10:00:54    5    judicial canon that restricted the speech of judicial candidates

6    in Arizona could be redressed through a favorable decision by

7    the Ninth Circuit because the injunctive relief was sought

8    against everyone who had the authority to enforce the law.  The

9    Court said, without a possibility of enforcement, there's

10:01:15    10    redressability and there's, therefore, standing.

11         But again, here we just have a case where any actions

12    taken by this Court will not restrain private parties from

13    having the ability to bring a WLAD action if they are aggrieved

14    under the WLAD and believe that they have been discriminated

10:01:33    15    against in employment by the Union Gospel Mission, and this is

16    something that can't be controlled.

17         I would also, I think, point out the question of co --

18    whether UGM has a right to hire only co-religionists under the

19    First Amendment, that's obviously a merits issue.  That's not

10:02:00    20    really appropriate for us to get into the merits of that on

21    especially a motion to dismiss.  But the question of whether,

22    you know, UGM can only hire co-religionists and has a right to

23    do so was one that the *Woods* decision, while not -- did, in

24    effect, reach under the facts of that case because in that case,

10:02:23    25    Mr. Woods made it clear that -- to Seattle Union Gospel Mission

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    41
Video Conference Motion Hearing/May 31, 2023
Further Argument on Motion to Dismiss by Mr. Ward

1    that he disagreed with Seattle Union Gospel Mission's positions

2    on marriage of same-sex couples and sexual intimacy between

3    same-sex couples.  And the Court really could not have ruled in

4    the way it did in *Woods* if it believed that his disagreement

10:02:50  5    with SUGM, Seattle Union Gospel Mission's, religious beliefs on

6    sexuality and marriage were a basis for -- a legitimate basis

7    for them to refuse to employ him as a -- if he were a

8    non-ministerial employee.

9         So that's, you know, a case where I think *Woods* does not

10:03:13  10   address that issue explicitly, but implicitly, I believe the

11   *Woods* decision does say that co-religious -- did reject, in a

12   sense, the co-religionist argument that is being advanced here.

13        And finally, Your Honor, I would note that, you know,

14   Union Gospel Mission again has said here that they are not

10:03:42  15   asserting that any of their employees -- particularly the

16   operations assistant and the IT technician positions, are --

17   they're not asserting that those are ministerial positions, but

18   again, if you look at their complaint, Exhibit 4 to the

19   complaint asserts that all employees of Union Gospel Mission are

10:03:59  20   ministers by -- what are known as ministers by law and court

21   decision.  So that's not in the biblical sense, that is in the

22   legal sense that they've taken that position before, so I think

23   there is, again, some matter of factual dispute as to whether --

24   and it's unclear to us, whether UGM does, in fact, employ

10:04:20  25   non-ministerial employees.

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD      42
Video Conference Motion Hearing/May 31, 2023
Further Argument on Motion to Dismiss by Mr. Tucker

1    So with that, Your Honor, I will conclude and again urge

2  the Court to dismiss UGM's complaint for lack of justiciability.

3    Thank you.

4    THE COURT:  Mr. Tucker, anything further on the motion

5  to dismiss?

6    Oh, Mr. Tucker, you're on mute.

7    MR. TUCKER:  I'm sorry, Your Honor.

8    THE COURT:  That's all right.

9    MR. TUCKER:  As to that -- yes, I would like just a

10  couple of things in response.

11    As to the latter point, on whether or not the Mission

12  itself has created some sort of factual dispute based on the

13  filings with the Court, Justice Thomas, maybe one other on the

14  Supreme Court, has certainly indicated that they believe that --

15  or that religious organizations should have the right to declare

16  for themselves who ministers are.  And as much as I would like

17  that to be the law of the land, there are not five votes at the

18  US Supreme Court right now that actually say that.

19    Now, if opposing counsel, if -- if the -- if the

20  defendants want to admit that every single employee at the Union

21  Gospel Mission is, indeed, a minister, then I would agree that

22  we don't have an issue here.  But the reality is we have

23  positions that we ourselves view as non-ministerial; we have

24  admitted as much and said as much in our -- in our filings.  If

25  you look, of course, even at the job descriptions of an IT tech

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    43
*Video Conference Motion Hearing/May 31, 2023*
*Further Argument on Motion to Dismiss by Mr. Tucker*

1    professional, as well as an administrative assistant, then I

2    think that further underscores that.

3            And interestingly enough, there was actually a case just

4    this Friday out of North Carolina -- I'm sorry, out of Florida,

10:06:17  5    the Middle District of Florida in a case styled *Ratliff v.*

6    *Wycliffe Associates* -- yeah, *Associates*, where the Court looked

7    at that and likewise -- you don't have -- Your Honor doesn't

8    need to go here because you don't need to analyze whether or not

9    this is a ministerial position or not, but I don't think there's

10:06:36  10    any question whether it's judicially or, certainly with us, as

11    to whether or not an IT professional is -- is a minister or not.

12    The terms used internally, again, are because we have a mission

13    to spread the gospel message, so that is why the term "minister"

14    is used.

10:06:56  15            Your Honor mentioned some -- you know, what you were

16    grappling with was this idea of the letter, the importance of

17    the letter.  The reality is we don't need a letter for -- to

18    have standing.  I think *SBA List* says that.  I think *Tingly* says

19    that as well.  Our injury is really different.  We've got a

10:07:19  20    self-chill.  We're not -- and the inability to hire.  We have

21    not sued the Attorney General saying that "you're retaliatory

22    towards us, that you are hostile in -- in asking for truckloads'

23    worth of internal documents that we use to govern our own body."

24    That is not the challenge here.  And so there's quite a bit of

10:07:45  25    difference.

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    44
Video Conference Motion Hearing/May 31, 2023
Further Argument on Motion to Dismiss by Mr. Tucker

1          And like I said, if you go back and look at *Tingly*, if

2     you look at even the Ninth Circuit decisions like, I think, *Cal*

3     *Trucking* and even maybe *Yellen*, the important deciding factor

4     there is disavow, and the fact is -- still haven't heard it

10:08:04    5     today -- the failure to disavow means that we actually do, in

6     fact, have a case in controversy here as well.

7          On -- on *Wolfson,* on the redressability question there,

8     third parties can still file complaints even in that Ninth

9     Circuit decision.  I think the fact that, and I think this -- I

10:08:27   10     think the analysis is bolstered actually by the documents that

11     the defendants have brought forth.  They actually included in

12     their papers evidence of these third-party complaints that have

13     been -- that were brought both before this lawsuit and also

14     while this lawsuit has been pending.  And so we've had at least,

10:08:46   15     I think, five different complaints filed against us, so I think

16     that shows that this is, indeed, a concrete concern.

17          And I'd say lastly, sort of moving backwards, the

18     *Ockletree* decision again, if you read that, if you look at the

19     part that the defendants are quoting there, there's disagreement

10:09:09   20     on that concurrence and what was actually meant by that.  I

21     think if you read it, that judge was actually reframing what he

22     thought the appropriate inquiry should have been because they

23     were posed a question by the federal court.  I just disagree

24     with that analysis.  To me, again, it's neither here nor there,

10:09:29   25     because we're facing ongoing harm now, and the Attorney General

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    45
*Video Conference Motion Hearing/May 31, 2023*
*Further Argument on Motion to Dismiss by Mr. Tucker*

1    didn't announce that they would enforce the WLAD on these

2    grounds until after the *Woods* decision, and so timing-wise, I

3    think that's -- that's an important piece of -- of this

4    analysis.

10:09:53   5        And then, also, I question why in the world *Woods* was

6    even necessary if *Ockletree* already resolved the issue.  There

7    were a lot of questions that came as a result of that decision

8    from the Washington Supreme Court.  And I think the clarity

9    came, though, post-*Woods* when the Attorney General said

10:10:12   10   pointblank:  If you've got ministers, you're okay.  If you have

11   non-ministers, you're not.

12        Guess what?  Union Gospel Mission of Yakima has

13   non-ministerial positions, which means we're directly in the

14   bull's eye.

10:10:30   15       And with that, Your Honor, I -- I rest on our briefing.

16   I would respectfully ask the Court to retain the case, and I can

17   move on, Your Honor, towards the merits, if you'd like, or

18   pause.

19        THE COURT:  Not quite yet.  Mr. Tucker, a moment ago you

10:10:47   20   mentioned something about five complaints.

21        Can you expand on that?  I just want to make sure I

22   heard you correctly.

23        MR. TUCKER:  Yes, Your Honor.  In the -- in response

24   to -- let me grab my notebook here.

10:11:01   25        In response to the motion for preliminary injunction,

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD
Video Conference Motion Hearing/May 31, 2023
Further Argument on Motion to Dismiss by Mr. Tucker          46

1    there were exhibits.  There was a declaration by opposing

2    counsel -- or, I'm sorry, by -- there were a few different

3    complaints.  There was an Exhibit A to the Gonzalez declaration.

4    That was a Commission complaint against the Mission alleging

10:11:26   5    disability discrimination.  There was an Exhibit B to the

6    Gonzalez declaration; there was a complaint there against the

7    Mission alleging sex discrimination.  Exhibit C was one

8    involving retaliation; D was regarding a contractor alleging

9    religious discrimination as well.

10:11:50   10    And in addition, Your Honor, to I think those

11    complaints, I think our standing is also bolstered by the fact

12    that if you look at our complaint, we actually cut and paste --

13    one of the applicants for an IT position gave some very hostile

14    responses to those inquiries, and so we've got both evidence of

10:12:16   15    the fact that individuals have actually filed complaints

16    historically, and then also we're dealing with it in realtime.

17    And, quite frankly, that's why we have the religious

18    hiring statement.  One of the things that the Mission is trying

19    to do is to be abundantly clear to the public as to what its

10:12:31   20    position is so as to avoid someone coming in and saying, "Well,

21    gosh, I didn't really know these were your beliefs."  We want to

22    be abundantly clear:  We are who we are.  We have beliefs on

23    biblical sexuality that some may agree with and others may not,

24    but we have the right -- and this starts to get into the

10:12:51   25    merits -- but we have the right to hire individuals that are

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*     47
*Video Conference Motion Hearing/May 31, 2023*
*Further Argument on Motion to Dismiss by Mr. Ward*

1    like-minded, that believe like we do.

2         THE COURT:  All right.  Mr. Ward, it's defense's motion.

3    You get the final word.

4         Anything further?

10:13:06    5         MR. WARD:  Yes, Your -- yes, Your Honor.

6         Just to pick up on the last point that was being raised

7    about complaints about the Union Gospel Mission that may have

8    been received by either the Attorney General's office or the

9    Human Rights Commission, none of those complaints have been

10:13:22    10    acted upon because, one, I mean, some of them are out of time,

11    some of them are brought by people who don't have coverage under

12    the WLAD as contractors.  None of them are challenges to the

13    religious hiring practices of UGM.  And I think even UGM would

14    acknowledge that it is subject to disability discrimination

10:13:45    15    claims and -- which was certainly an issue in the *Ockletree*

16    where disability discrimination was alleged and was found that

17    the WLAD's religious employer exemption did not apply there for

18    a non-ministerial -- well, for an employee whose duties were not

19    religious in nature.

10:14:03    20         So the fact that these complaints have been filed I

21    think just shows that there's a lack of complaints that have

22    been received by either, you know, the Human Rights Commission

23    or by the Attorney General's office over the religious hiring

24    practices that are at issue in this case, and again, go back to

10:14:20    25    the lack of enforcement and the lack -- which again turns to the

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    48
Video Conference Motion Hearing/May 31, 2023
Further Argument on Motion to Dismiss by Mr. Ward

1    lack of a concrete and particularized injury or an injury in

2    fact that has been suffered by UGM.

3        THE COURT:  What about their argument that there's an

4    ongoing harm because they would like to hire consistent with

5    what they believe is their First Amendment rights, and they feel

6    as though they cannot do that because it would put them in

7    direct conflict with the way in which the Attorney General's

8    office says they interpret the statute?  How is that not an

9    ongoing harm to the entity, that they cannot hire at this stage

10   positions that they need because of what they perceive as the

11   direct conflict?

12       MR. WARD:  Your Honor, any alleged chill that they have

13   here is self-inflicted, in our view, because we have not

14   threatened any enforcement against them, we have not taken any

15   action against them, and there's been no investigation of them.

16   So, you know, this would be something that we view as a

17   self-inflicted harm that is not actionable.

18       THE COURT:  So your position is that they actually have

19   to take the action that they would -- that they believe is

20   subject to First Amendment protection to expose themselves to

21   that liability before they have a sufficient concrete injury in

22   order to address these issues in court?

23       MR. WARD:  Your Honor, I wouldn't say that.  I would say

24   that they have to have something that is more concrete and

25   particularized than what we have here today, which is zero

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    49
Video Conference Motion Hearing/May 31, 2023
Argument on Preliminary Injunction by Mr. Tucker

1    history of enforcement against them, zero threat of enforcement

2    against them by the Attorney General's office or any of the

3    defendants.

4         And I do believe that, you know, none of the cases that

10:16:02    5    have been cited here say that without some kind of a concrete

6    and particularized threat of an injury, that you have a basis to

7    bring this kind of a suit at this point.

8         THE COURT:  Thank you.  Anything further at this stage,

9    Mr. Ward, on the motion to dismiss?

10:16:22    10         MR. WARD:  No, Your Honor.  Thank you.

11         THE COURT:  All right.  We'll turn to the motion for a

12    preliminary injunction.  That is plaintiff's motion, so I will

13    hear from Mr. Tucker first.

14         MR. TUCKER:  Thank you, Your Honor.

10:16:32    15         When considering motions for preliminary injunction,

16    there are four standard factors that the courts often look at,

17    with primary focus, of course, on the likelihood of success

18    component.  And so I'll get into these more substantively, but

19    there are four different claims, if you will, that we think

10:16:56    20    would allow us to receive preliminary injunctive relief.

21         The first, which I'll go into in greater detail here

22    momentarily, is, of course, the religious autonomy argument, the

23    fact that the WLAD intrudes on the Mission's autonomy and

24    freedom to decide for itself matters of internal governance.

10:17:21    25         The second one is free exercise, so separate and apart

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    50
Video Conference Motion Hearing/May 31, 2023
Argument on Preliminary Injunction by Mr. Tucker

1    from religious autonomy.  The reality is that the WLAD is not

2    generally applicable because it exempts small employers, and

3    I'll touch upon that in more detail here momentarily.

4            Third, certainly not third on our list, and I do want to

10:17:39  5    emphasize this -- this cause of action, expressive association

6    is another form by which the Court may give us relief, and

7    there, the WLAD forces the Mission to employ those who are not

8    totally aligned with its religious beliefs.  And if you look

9    at -- there was recent case out of the Second Circuit just a few

10:18:01  10   months ago called *Slattery*, that's 61 F.4th 278, pinpoint cite

11   288, that is directly on point to what we have here, and so I

12   would encourage -- encourage the Court to focus on that.

13           And then lastly, speech as well.  The WLAD's, what we

14   call, publication and disclosure provisions also limit what the

10:18:23  15   Mission may say in its job advertising.

16           So taking those sort of one step at a time in the

17   likelihood of success, let's start first with the co-religionist

18   exemption.  And let me step back for a moment and just talk

19   about history.  For literally decades, the idea that religious

10:18:42  20   institutions can hire co-religionists has been well engrained in

21   not just the law but also sort of commonsensically.  You can go

22   back 150 years to the *Watson v. Jones* case, the US Supreme

23   Court, and see language in that, embedded in that case; you can

24   jump ahead to the '50s and look at the *Kedroff* case as well that

10:19:02  25   talks about the importance of religious autonomy.

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Preliminary Injunction by Mr. Tucker*

51

1    And the way I like, I think, best to explain this, Your

2    Honor, is if you think about religious autonomy as like an

3    umbrella, so you have at the top of the umbrella religious

4    autonomy, and then as offshoots from that, underneath the

10:19:20    5    doctrine of religious autonomy, on one side you have the

6    ministerial exception, and in that -- in that -- in that space,

7    in that bucket, the ministerial exception applies to a narrow

8    collection of employees, but it has very broad protection.

9    On the other side underneath that umbrella you have the

10:19:40    10    co-religious exemption.  Unlike the ministerial exception, the

11    co-religionist exemption applies to a broad collection of

12    employees, and in our instance, we believe every single employee

13    at the Yakima Mission, but it has more narrow application.  The

14    protection itself means that there is a shielding of employment

10:20:02    15    decisions that are rooted in religious practice, observance, or

16    belief.

17    I would just say at the outset, because I know it's

18    going to be brought up, I'll just deal with it on the front end,

19    we're not saying that if someone files a complaint that the

10:20:19    20    Commission or that the Attorney General can't inquire about that

21    particular allegation.  What we are saying, though, is that in

22    response to that, if the complaint relates or is tied to an

23    employment decision that is based upon a religious practice,

24    observance, or belief, at that point, that's when the inquiry

10:20:44    25    stops.

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    52
Video Conference Motion Hearing/May 31, 2023
Argument on Preliminary Injunction by Mr. Tucker

1          So, again, going back to the case law and what this --

2     what this looks like, the co-religionist doctrine or exemption

3     and the constitutionality, how it's embedded in the Constitution

4     is -- is not foreign to other courts, certainly other circuit

10:21:08  5     courts.  In fact, if you look, there's at least six different

6     courts of appeals, albeit looking at it in the confines of

7     Title VII, but have made very clear that a narrow reading of

8     Title VII's religious exemption would necessarily raise federal

9     constitutional issues.  So I'll explain that here a little bit

10:21:31  10    more concretely.

11         If you look at the *Hall* case out of the Sixth, the

12    *Little* case out of the Third, *Mississippi College* out of the

13    Fifth, the *Killinger* decision out of the Eleventh, what these

14    cases hold is that you have embedded in the context of Title

10:21:49  15    VII, you have a religious exemption, and what the courts are

16    saying is, look, thank goodness there's a religious exemption

17    that exists there in Title VII, because if you take that

18    exemption away, all of a sudden you've got federal

19    constitutional problems.

10:22:06  20         And for decades, decades this has not been an issue.  In

21    fact, if you look across the United States, all of these states

22    have a corollary to Title VII in their state statutes.  The

23    problem that exists, and Washington is an anomaly, is that now

24    that corollary, that religious exemption that would cover

10:22:26  25    non-ministerial employees is now absent.  It is completely gone.

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    53
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Preliminary Injunction by Mr. Tucker*

1    And because it's gone, we now have a federal constitutional

2    issue.  And those cases from those circuits underscore that

3    exact point.

4         And if Your Honor is concerned about, well, okay, what

10:22:43    5    about the Ninth Circuit?  Well, I think the Ninth Circuit has

6    given us a preview of what they would hold in this instance.  If

7    you look at the *EEOC v. Townley Engineering* case -- granted it

8    wasn't the main point of it, but the Ninth Circuit said it --

9    they said even without -- and they're referring to Title VII's

10:23:03    10    religious exemption -- it says:  The First Amendment would limit

11    Title VII's ability to regulate the employment relationships

12    within churches and similar organizations.

13         The *World Vision* case, if you look at the concurring

14    opinions in that case, *Spencer v. World Vision*, Judge Kleinfeld

10:23:20    15    actually gave a really, I think, eye-opening quote there that

16    sort of underscores again why we're here today.  He said:  If

17    the government coerced staffing of religious institutions by

18    persons who rejected or even were hostile to the religions of

19    the institutions they were intended to advance, then the shield

10:23:40    20    against discrimination would destroy the freedom of Americans to

21    practice their religion.

22         So I think the Ninth Circuit has already told us what it

23    thinks about co-religionist exemption and whether or not it's

24    actually embedded in the US Constitution.  In addition to that,

10:23:55    25    even other circuits outside the Title VII context, *Bryce*, the

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*     54
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Preliminary Injunction by Mr. Tucker*

1    *Bryce* decision we actually cite out of the Tenth Circuit.  That

2    case involved an employee who was in a same-sex relationship,

3    and it was a dispute about -- about discipline.  And the Court

4    said that ecclesiastical -- it was an ecclesiastical one about

5    discipline, faith, internal organization, or ecclesiastical

6    rule, customer law, and was not a purely secular dispute.

7        We also cite, just more recently there was a case out of

8    the Southern District of New York that also said this exact same

9    thing.

10        So I think it's fairly apparent that this is embedded in

11   not just case law but obviously the federal Constitution

12   requires it.  The unfortunate thing here -- and we litigate

13   across the United States -- Washington is an anomaly.  It's out

14   on an island.  I mean, if we step back from the legalese for a

15   moment and just think about the prospect that somehow a

16   religious organization could be forced to hire some activist

17   that has a differing view on biblical sexuality, that's how

18   *Woods* came about.  But it's nonsensical to think that somehow

19   we've reached a world where a religious organization can't hire

20   a co-religionist.  I get lost in these sometimes.  When I step

21   back from it, I just think there's no way that that can be.  And

22   I think --

23        THE COURT:  But, Mr. Tucker, how do I square the

24   argument that you are making with the Supreme Court's decisions

25   in *Hosanna-Tabor* and *Our Lady of Guadalupe Schools* where this --

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    55
Video Conference Motion Hearing/May 31, 2023
Argument on Preliminary Injunction by Mr. Tucker

1    when -- you know, analyzing the issue and rights of religious

2    entities to choose, you know, their management and their

3    ministers without interference from the government, and

4    balancing that with the right of individuals not to be

10:25:52    5    discriminated against?  The Supreme Court is the one who has

6    established this, you know, ministerial exception for where

7    there can be government regulation and interference.

8         How do I square the argument that you are making with

9    the Supreme Court -- at least what I view the Supreme Court's

10:26:07    10    most recent pronouncements about the way that those issues

11    intersect?

12         MR. TUCKER:  Well, the -- we applaud both -- we have

13    applauded both of those decisions, and they do -- they do mix

14    well together.  Again, the ministerial exception you put in one

10:26:21    15    bucket, so you have individuals that, if you're deemed a

16    minister, then you have broad protections of -- if a

17    discrimination complaint is alleged.  The problem is you're

18    going to have positions like an IT professional, like an

19    administrative assistant, who aren't necessarily meeting -- if

10:26:40    20    you look at the factors, for example, in *Hosanna-Tabor* and then

21    further expounded upon in *Our Lady of Guadalupe*, there are

22    individuals that fall outside those lines, where they're not

23    really there to necessarily minister to others.  These are -- in

24    the co-religionist space, you're looking at internally, these

10:27:01    25    are almost inward-facing employees that don't necessarily have

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    56
Video Conference Motion Hearing/May 31, 2023
Argument on Preliminary Injunction by Mr. Tucker

1    the job description, they don't have the requirement necessarily

2    of -- of teaching, espousing the faith, being required to take

3    certain doctrinal courses that the Supreme Court viewed in

4    *Hosanna-Tabor* and also in *Our Lady of Guadalupe.*

10:27:25    5        The Supreme Court, you know, admittedly hasn't taken a

6    case to recognize yet that the co-religionist exemption is,

7    indeed, embedded in the First Amendment.  The -- these other

8    circuit courts, I think, have -- have spelled out what that

9    answer is.  But the reason the Court has not had the opportunity

10:27:45    10    is because for decades this has been a nonissue.  It didn't

11    become an issue until last year when Attorney General Ferguson

12    came out and said, "Guess what?  The WLAD doesn't apply to

13    non-ministerial positions."

14        States across the union have exemptions already

10:28:03    15    embedded, so this constitutional issue never arises because it's

16    not a concern.  And, again, if you go look at *Hall*, if you look

17    at *Little*, those cases are saying, "Thank goodness we've got

18    this exemption, because otherwise we'd have to deal with this

19    constitutional issue."  It's a backstop --

10:28:18    20        THE COURT:  But why would the Supreme Court set up this

21    distinction if, in fact, every position would be considered, you

22    know, co-religionist, whatever it may be?  Why would this

23    distinction be necessary, that the Supreme Court has set up, if

24    your theory is the law?

10:28:36    25        MR. TUCKER:  Well, I think -- I think the Court has --

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    57
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Preliminary Injunction by Mr. Tucker*

1    has historically been very incremental and only wants to deal

2    with the facts in those particular instances.  I think -- I

3    think in -- in those instances, both in *Hosanna-Tabor,* as well

4    as in *Our Lady of Guadalupe*, we were focused on the -- the fact

10:29:05    5    that they were teachers, they're only looking at the -- those

6    that were before them.  And here, we're talking outside the

7    confines of teachers themselves.  And the -- the Court, I would

8    have liked them to have taken the *Woods* decision.  They did not.

9    And so -- as Justice Alito, though, highlighted in that cert

10:29:32    10    denial, he made very clear there's going to come a day where we

11    have to deal with this, and we believe that this -- that this is

12    apparent, certainly, in this particular instance.

13         Beyond even the co-religionist argument, Your Honor,

14    there's still three other reasons why Your Honor could grant

10:29:50    15    preliminary injunctive relief here.  On the free exercise front,

16    again, very briefly, the WLAD is not neutral and generally

17    applicable.  The purpose -- the stated purpose of the WLAD is to

18    eliminate and prevent discrimination.

19         The problem is when you look at it, it has an exemption

10:30:10    20    for small employers, so if you're under eight employees, you

21    can -- you can discriminate, really, with no -- with no question

22    or no issue.  And when you start building in treating religious

23    organizations differently, if you go and look at the *Fulton*

24    case, *Fulton v. City of Philadelphia*, it's a very important case

10:30:34    25    relative to general applicability and its -- and how it relates

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Preliminary Injunction by Mr. Tucker*                    58

1    to this particular case.

2            In addition to that, you've got individualized

3    exemptions.  You've got the Commission, in essence, being able

4    to -- in certain instances, they're authorized under the

10:30:54  5    statute -- you look at 49.60.180, Subsection 3, it says that the

6    Commission is authorized, quote, by regulation or ruling in a

7    particular instance, end quote, to permit any employment

8    practice if the Commission finds the practice to be appropriate

9    for the practical realization of a quality of opportunity

10:31:15  10   between the sexes.  So now you've got the Commission being able

11   to say, "Well, yeah, I think this is going to provide equality

12   or opportunity for the sexes, so we're going to go ahead and

13   give a pass on this."

14            Whenever you have the ability of a Commission like that

10:31:28  15   to give a pass to make these individualized exemptions, then

16   that too, also is a free exercise violation, when you look at

17   the *Fulton* case.

18            THE COURT:  I thought the responsive brief indicated

19   that that exemption was no longer -- because of subsequent

10:31:44  20   either legislative action or court decisions was -- can no

21   longer be used.

22            Did I misunderstand the brief, Mr. Tucker?

23            MR. TUCKER:  Well, even if you -- I think, Your Honor,

24   even if it's not used at all, if you go back and look at *Fulton*,

10:31:58  25   the *Fulton* decision from the Supreme Court actually is the

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    59
Video Conference Motion Hearing/May 31, 2023
Argument on Preliminary Injunction by Mr. Tucker

1    response to that.  It doesn't matter whether or not it's

2    actually -- if it's on the books and it's not being used, it's

3    neither here nor there.  It's a --

4         THE COURT:  I think that's actually not true.  The

10:32:09  5    question is whether if it's -- if there's a deliberate choice

6    for it to not be used or if there is subsequent legal authority

7    that says it can't be used.  I think there is a distinction

8    between those issues, because it goes to the issue of

9    discretion, and if the discretion no longer exists because the

10:32:25  10   statute has been, you know, deemed unconstitutional, even though

11   it may still be on the books, I think there's an issue there,

12   and that's what I'm trying to get to the issue of, is what is

13   your understanding of the status of that statute?  Is it a

14   discretion they are not using it, or is there a legal barrier to

10:32:41  15   them using it?

16        MR. TUCKER:  My understanding, Your Honor, was that it

17   was discretionary, but, you know, it's not -- it's not a point

18   that is, again, needed even for preliminary injunctive relief

19   here because even the one I referenced before, the fact that

10:32:56  20   religious organizations are being treated less than employers

21   that have seven or less employees in and of itself makes this

22   not generally applicable.  And so even on that basis alone,

23   again, I would say we could win on free exercise.

24        Beyond that, and I mentioned this sort of at the outset

10:33:18  25   as I was providing a roadmap, one area that I think has gained

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*     60
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Preliminary Injunction by Mr. Tucker*

1    importance even since the filing of this lawsuit is the

2    expressive association claim that we have.  There, when you look

3    at what's required under expressive association, you have -- you

4    know, a couple different elements need to be met there.  One is

10:33:39    5    whether or not the group engages in expressive association.

6    Here, if you look at Exhibit 1 to our complaint, we say very

7    clearly that the Mission's purpose is to spread the gospel of

8    the Lord Jesus Christ, so we certainly have an express purpose,

9    and we engage in expressive association by spreading the gospel

10:34:00    10    of Jesus Christ.

11         The second one, element there is whether the forced

12    inclusion of a person significantly affects the group's ability

13    to express its message.  And here the courts have provided that

14    you must give deference to the organization in deciding what

10:34:19    15    would or would not impair the message of the organization.

16         I'll just jump to the main point here.  If you look at

17    the *Slattery* case, again out of the Second, there it was a

18    pro-life center that challenged a state employment statute, a

19    nondiscrimination law that prevented discrimination based on

10:34:40    20    reproductive health decisionmaking, whether or not they obtained

21    an abortion or had an abortion.  There the Second Circuit held

22    that the center had the right to determine whether or not its

23    employees will effectively convey its message.

24         Now, the response that you're going to hear momentarily

10:34:55    25    is, "Well, wait a second.  Timeout.  You know, the -- you know,

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    61
Video Conference Motion Hearing/May 31, 2023
Argument on Preliminary Injunction by Mr. Tucker

1    this right of expressive association doesn't apply in the

2    employment context."  Again, that is what happened in the Second

3    Circuit case.  It's not just the Second Circuit that has found

4    this.  The Fifth Circuit has found this as well in *Bear Creek*.

10:35:13  5    And, Your Honor, I think if you're interested, although I don't

6    think the Ninth Circuit squarely addressed it, if you look most

7    recently, just this last year, in the concurring opinion in the

8    *Green v. Miss United States of America* case, the concurrence

9    there again makes very clear -- again, it's a concurring

10:35:33  10    opinion, not the -- not the majority but the concurring opinion

11    there makes clear that this right is found in the employment

12    context itself.

13         And so, again, I think the expressive association claim

14    is -- is not just third on the list, it's actually a very

10:35:52  15    important point and one on which the Court can rely.

16         The fourth is speech.  In the speech context, as we've

17    talked about before, the Mission has -- has chilled its speech

18    based on what we define as the publication ban in our papers and

19    then also the disclosure provision.  And we feel that,

10:36:15  20    obviously, the inability not just to post, but also the

21    inability to actually have a conversation with, to require

22    disclosure of certain information is, indeed, a restriction on

23    speech.

24         The State says, "Well, no, no, no.  That doesn't

10:36:33  25    really -- there's really no restriction of speech here."  I

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    62
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Preliminary Injunction by Mr. Tucker*

1    think I would point Your Honor back to the -- another Ninth

2    Circuit decision from this very year, from 2023.  It's *Yim v.*

3    *the City of Seattle*, 63 F.4th 783, where the Court held, I think

4    very similarly or analogously here, that -- it involved some

10:36:59  5    landlord/tenant issues, but it basically said that a law that

6    prohibited, quote, requiring disclosure or inquiring about

7    prospective tenants' criminal records infringed upon the

8    landlord's speech.  So our inability to inquire about their

9    positions on issues of biblical sexuality, again, that is a

10:37:21  10    speech concern.

11         Then very briefly, Your Honor, so I can wrap up the main

12    portion of this, the other preliminary injunction factors, like

13    irreparable harm, we've talked about the harm previously; the

14    Mission's rights, again, are chilled.  That alone -- you know, I

10:37:40  15    don't want to go back and relitigate -- or rediscuss the

16    standing elements, but certainly chill itself alone, *SBA List* to

17    me -- *SBA List* and *Tingly* really solidify that, but they also

18    help us in this instance as well, making very clear what injury

19    is.

10:38:00  20         The State's response to this is, "Well, you know, some

21    of these harms, they may be modest in kind."

22         I'm not aware, Your Honor, that there's a distinction

23    between modest or extreme harm, in the context of preliminary

24    injunctions, and so rather than put that on some sort of sliding

10:38:20  25    scale, I don't think that's necessary.  The reality is that we

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    63
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Preliminary Injunction by Mr. Ward*

1    have been harmed.

2        And then as it relates to the balance of -- of equities

3    of the public interest piece, again, here there's no -- there's

4    no burden on the government for not being able to

10:38:36    5    unconstitutionally enforce a law, and certainly the Attorney

6    General and the Commission remain free to enforce the WLAD

7    against others.

8        I think it's very important to note -- I don't know if

9    I've mentioned this previously -- that this is an as-applied

10:38:54    10    request.  You know, we're not asking for the world.  We're

11    asking as it relates to the Union Gospel Mission of Yakima.

12        And if -- if there's no further questions, Your Honor,

13    that concludes at least my opening on the motion for preliminary

14    injunction.

10:39:11    15        THE COURT:  Thank you Mr. Tucker.

16        Mr. Ward, are you making the argument on behalf of

17    defendants on this matter as well?

18        MR. WARD:  Yes, Your Honor.

19        THE COURT:  All right.

10:39:21    20        MR. WARD:  Thank you.

21        I'd like to begin by just noting what is an obvious

22    point:  That the Court need not, and, indeed, cannot, consider

23    the preliminary injunction motion if it finds that UGM lacks

24    standing to bring this case.  So the standing issue is the

10:39:40    25    threshold issue, obviously, here.  But even if we were to get

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    64
Video Conference Motion Hearing/May 31, 2023
Argument on Preliminary Injunction by Mr. Ward

1    past that and to look to plaintiff's motion for a preliminary

2    injunction, it must be denied.  UGM has failed to make a showing

3    that it is likely to succeed on the merits of its claim and that

4    it is entitled to the extraordinary remedy of a preliminary

10:40:03    5    injunction.

6         It has not shown any of the other factors that are

7    required for a preliminary injunction, including irreparable

8    injury, balance of hardships, or public interest.  Primarily it

9    just argues on those factors that if it makes a strong showing

10:40:18    10    of likelihood of success on the merits of its claims, it will

11    automatically satisfy the other factors for an injunction.

12         But here there's simply very thin bases as a matter of

13    law and as a matter of precedent, particularly in the Ninth

14    Circuit, for the merits of plaintiff's claims.

10:40:42    15         I'd like to begin with something that I think is -- was

16    raised by my opposing counsel in his argument and is in,

17    obviously, the briefs of the parties, too.  As I understand it,

18    the position of UGM is that somebody could bring a

19    discrimination claim to the Human Rights Commission or to the

10:41:05    20    Attorney General's office, but any inquiry into the alleged

21    discrimination would have to stop as soon as a religious belief

22    is asserted as a basis for the discrimination.  And that

23    position is underscored in UGM's briefing as well.

24         This is a theory that has not been accepted by any

10:41:25    25    court.  And it's quite a sweeping theory.  Under this theory,

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*     65
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Preliminary Injunction by Mr. Ward*

1  religious employers would have to be exempt from any claim for

2  discrimination in employment, regardless of the employee's job

3  position or duties, whenever the employer asserts a religious

4  belief to justify the discrimination.

10:41:41  5       And I think Your Honor's questioning about the, you

6  know, development of the ministerial exception is on point here,

7  because certainly the US Supreme Court has never gone as far as

8  this has been suggested and has not adopted this as a rule.

9  Indeed, as my opposing counsel concedes, there's no Supreme

10:41:58  10 Court precedent on this issue, there's no Ninth Circuit

11 precedent either, that recognizes the sweeping co-religionist

12 exemption that plaintiffs are putting forward here.

13       Now, there is -- there is an exemption in Title VII that

14 is sometimes called Section 702, that provides an exemption

10:42:22  15 under Title VII for employers to -- to prefer to hire people who

16 share their religious -- religious affiliation.  This has been

17 on the books for quite some time, but it has not prevented

18 courts from around the country, including the Ninth Circuit,

19 from saying that just because an employer has a religious basis

10:42:43  20 for discriminating against somebody based on sex or race or

21 national origin, Title -- you know, Section 702 of Title VII

22 does not give them a free pass for that discrimination, that

23 courts still can hear sex discrimination cases, for instance,

24 even if they are motivated by the religious belief of an

10:43:04  25 employer.

*Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD*    66
*Video Conference Motion Hearing/May 31, 2023*
*Argument on Preliminary Injunction by Mr. Ward*

1    And in our briefing, we cited a couple of cases from the

2    1980s from the Ninth Circuit, *Pacific Press* and *Fremont*

3    *Christian School* case, and there are literally dozens of cases

4    from around the country that also have found, again, that it is

10:43:21    5    possible, even if an employer has religious beliefs that are

6    discriminatory based on sex or other protected characteristics

7    under Title VII, that a party can still move forward with a

8    discrimination claim, notwithstanding the religious motivation

9    behind the discrimination.

10:43:40    10    So again, I don't think there's been even remotely close

11    to a showing of likelihood of success on a co-religionist theory

12    that, really, has not been adopted anywhere, and much less in

13    the Ninth Circuit.

14    Similar arguments can go towards the argument that the

10:44:00    15    WLAD is not a neutral law of general applicability.  As I

16    understand it, UGM's argument on this point is that the WLAD is

17    not a neutral law of general applicability because it exempts

18    small employers, people who employ less than eight people.

19    But Title VII, as I would point out, also exempts small

10:44:23    20    employers, people who employ less than 15 employees, and there's

21    been no question under federal law that that -- there's been no

22    holdings under federal law that that kind of small employer

23    exemption, as long as it's neutrally applied, does not violate,

24    you know, the rule that -- against having a neutral law of

10:44:42    25    general applicability.  Under both --

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    67
Video Conference Motion Hearing/May 31, 2023
Argument on Preliminary Injunction by Mr. Ward

1    THE COURT:  But given the way that -- given the way that

2    the Supreme Court has been looking at issues related to

3    neutrally applicable, so *Tandon*, *Kennedy*, when you're allowing

4    secular behavior to happen in a way that -- and not with respect

10:45:01  5    to religious-related behavior, what is your view on the way that

6    will be applied and interpreted to a provision such as this?

7    MR. WARD:  Religion is treated the same way: small

8    religious employers are exempt; large religious employers are

9    not exempt.  And that's the same for private -- for secular

10:45:23  10    businesses: smaller ones -- smaller secular employers are

11    exempt; larger secular employers are not.  Religion -- it's

12    neutral towards religion.  It does not distinguish or

13    discriminate in any way based on religion, so it's a neutral law

14    in that regard.

10:45:41  15    And *Tandon*, I believe, is even a case that we cited in

16    our briefing for support for this proposition that this

17    exemption is neutrally applied, so I believe it actually

18    supports, you know, our position on this.

19    And as Your Honor recognized during my opposing

10:46:02  20    counsel's presentation, we did, in our briefing, note that a

21    provision in the Washington Law Against Discrimination that was

22    adopted in 1971 that gave discretion to the Commission to adopt

23    rules and regulations meant to ensure practical equal -- or

24    practically equality of the sexes, that was adopted in 1971, but

10:46:31  25    the following year, 1972, the Washington voters approved the

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    68
Video Conference Motion Hearing/May 31, 2023
Argument on Preliminary Injunction by Mr. Ward

1    Equal Rights Amendment.  And in 1978, the Washington Supreme

2    Court held that the Equal Rights Amendment adopted in 1972 swept

3    away any statutes that permit special treatment of one sex,

4    because of the ERA.

5    So the statute is not -- that exception is not operable.

6    It hasn't been for -- nearly since it was adopted, and it is not

7    something that serves as a basis to show that the WLAD is not a

8    neutral law of general applicability.

9    THE COURT:  Well, and that's the question I was asking,

10    is it --

11    MR. WARD:  Yeah.

12    THE COURT:  -- a situation where discretion is granted,

13    it's just not used; or has it subsequently been determined

14    legally it can't be used?  Because I think that's a different

15    issue when you're discussing the First Amendment-related issues

16    of whether there's discretion and neutral applicability.  So

17    thank you for the clarification.

18    MR. WARD:  Yes, Your Honor.

19    Now, turning to arguments regarding the First Amendment

20    right to expressive association as a basis for UGM's claims,

21    again, the theory that they're advancing here is not one that

22    has been adopted by the Ninth Circuit; it's not one that has

23    been adopted by the United States Supreme Court.  There is just

24    very little precedent for holding that the right to expressive

25    association applies in the context of employment.

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD          69
Video Conference Motion Hearing/May 31, 2023
Argument on Preliminary Injunction by Mr. Ward

1      It has not been, you know, held in, for instance, the

2  *Dale* case that is relied upon substantially by -- by plaintiff.

3  The *Dale* case did not concern employment.  It was about

4  membership in the Boy Scouts of America as a private

5  organization, and it was a claim that had been brought under New

6  Jersey's public accommodations law, not their employment

7  discrimination laws.  So *Dale* does not provide support.  And

8  there have been other cases from around the country that we

9  cited in our brief, such as the *Billard* case out of North

10  Carolina, that recognize that *Dale* does not sweep so far.

11      There's also cases from the Supreme Court, such as

12  *Hishon v. King & Spaulding* from the 1980s, where an employer

13  attempted to assert that its rights of expressive association

14  applied in its context of denial of partnerships to women, and

15  that was not a successful argument in the US Supreme Court.

16      The *Slattery* decision is recent, it's from the Second

17  Circuit, it is not binding on this Court, and it's not one that

18  is consistent with case law in the Ninth Circuit or it's not one

19  that is -- you know, that I think the Court should look to

20  because it is not controlling on this Court, and it's not one

21  that is supported by other cases.

22      Finally, in issues related to First Amendment rights to

23  free speech, plaintiffs here are asserting that defendants have

24  chilled them from posting job advertisements for their positions

25  that they wish to hire for.  As we noted in our briefing, the

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD    70
Video Conference Motion Hearing/May 31, 2023
Argument on Preliminary Injunction by Mr. Ward

1    job posting that they -- you know, the religious hiring

2    statement that they wish to publish, however, does not actually

3    say that they will refuse to hire anyone based on a protected

4    category under the WLAD.  But in any case, there are

10:50:08    5    advertisements for positions that they are seeking to publish,

6    they are commercial speech, and they are entitled to less First

7    Amendment protection.  And there's case law cited by defendants

8    here that if you are hired -- if you are making a job posting

9    that violates the law -- that you know, seeks to hire -- you

10:50:33    10    know, discriminate in hiring, that is not speech that is

11    protected.  So, to a large extent, plaintiff's free speech

12    arguments here would depend on their likelihood of success on

13    the merits of their other claims.

14        Finally, just to mention -- plaintiff raises a claim

10:50:54    15    under -- that they call the disclosure requirement, I believe,

16    under the WLAD, which is, I think, RCW 29 -- or 49.60.208, I

17    believe is the section.  This is a provision of the WLAD that

18    prohibits employers from requiring employees to disclose their

19    religious beliefs or religious affiliation.  On its face, it

10:51:20    20    does not require employees -- or employers to restrict their

21    speech.  It just protects the right of employees not to

22    disclose.  And that way it distinguishes it from the *Yim v. City

23    of Seattle* case cited by plaintiff, where there was an ordinance

24    by the City of Seattle that prohibited not only requiring

10:51:42    25    disclosure but also inquiring about criminal histories.  So

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD        71
Video Conference Motion Hearing/May 31, 2023
Further Argument on Preliminary Injunction by Mr. Tucker

1    that's a distinction, and it's also just one that, this is a law

2    that there is no indication that it's ever been applied, as far

3    as we can tell in -- against anyone.

4        I think that will conclude my argument.  I know that we

10:52:09    5    are getting close to two hours, and I appreciate the Court's

6    patience, and I will stop there for now.

7        Thank you.

8        THE COURT:  All right.  Thank you.

9        Mr. Tucker.

10:52:22    10    MR. TUCKER:  Your Honor, just very briefly, a couple

11    points.  I want to go back just to the -- Your Honor's comment

12    earlier about sort of weighing what to do about *Hosanna-Tabor*,

13    *Our Lady of Guadalupe*, and then to just sort of maybe -- maybe

14    add a little bit more color to the ministerial exception and

10:52:41    15    co-religionist exemption sort of distinction.

16        I think it's important to note that the ministerial

17    exception is broader in that courts do not question the reason

18    for hiring or firing decision if the position is ministerial.

19    The Court simply stays out of it, in that instance, once that

10:52:57    20    determination is made.

21        On the other hand, with the co-religionist exemption,

22    that applies, of course, to non-ministerial employees.  Courts

23    can, and sometimes do, involve themselves in these disputes, but

24    when the employer or applicant for that non-ministerial position

10:53:16    25    does not share the employee's or employer's religious beliefs,

Union Gospel Mission of Yakima v. Ferguson/1:23-cv-3027-MKD
Video Conference Motion Hearing/May 31, 2023
Further Argument on Preliminary Injunction by Mr. Tucker    72

1    then the First Amendment steps in to protect the religious

2    employer in that instance.  So I just wanted to draw that

3    distinction.

4            Working backwards, some of the comments that defendants'

10:53:34  5    counsel made, going back to the expressive association, there

6    was a reference to -- to the Supreme Court's decision in the

7    *King & Spaulding* case, that was certainly pre-*Dale*, which --

8    which is, obviously, a similar decision in this -- in this

9    arena, but I think it's important to recognize there that if you

10:53:52  10   go back and look at the *King & Spaulding* case, the Court didn't

11   say that the right is inapplicable but only said that the law

12   firm there had failed to show how its expression would, in fact,

13   be altered.  So it really failed, if you will, both *Dale*

14   factors, even though it was pre-*Dale*, you don't have a group

10:54:09  15   engaging in, you know, that expressive association or -- or a

16   showing that somehow forced inclusion of a person would

17   significantly affect the group's ability to express its message.

18   So I think that's readily distinguishable.

19           And, again, I do think -- I understand that the -- that

10:54:26  20   the *Slattery* decision is in the Second Circuit, but it is very

21   much -- the analysis is very much on point here, and I do think

22   that, as I mentioned, the Fifth Circuit has tackled this in the

23   *Bear Creek* decision.  And, again, I would point Your Honor, if

24   you want to -- if -- something closer to home in the Ninth

10:54:51  25   Circuit, the concurring decision in *Green v. Miss United States*,

1    that's the 52 F.4th, pinpoint cite, 804 to 805, is where Judge

2    VanDyke really discusses that particular element.

3         Also, Your Honor, you know, you referenced -- in

4    relation to the neutral and generally applicable discussion, I

10:55:18    5    think you were right on target, Your Honor, when you mentioned

6    *Tandon*.  You know, and we have a disagreement, obviously, with

7    opposing counsel on what *Tandon* means, but we know that during

8    the line of COVID cases that came out, one thing that eventually

9    became abundantly clear, with *Tandon* at least, was that you

10:55:37   10    can't treat religious organizations lower, as second class.  And

11    so here, I think, you know religion -- religious organizations

12    are put on a -- on a different plateau, and when you have

13    organizations that, by the mere fact they've got seven or eight

14    individuals, are able to indiscriminately discriminate, I think

10:56:03   15    that underscores the free exercise concern there as well.

16         I think that's all I have, Your Honor, in rebuttal to

17    Mr. Ward's comments.

18         THE COURT:  All right.  Like last time, I'll offer you

19    each one more opportunity.

10:56:19   20         Mr. Ward, anything else you'd like to say at this time?

21         MR. WARD:  Your Honor, it may be exhaustion, but I'm

22    going to say "no."

23         THE COURT:  All right.  Okay.  That will conclude the

24    arguments today.  Counsel, I am not going to be ruling today.  I

10:56:35   25    will issue an order, obviously, first on the motion to dismiss.

1    Depending upon the results of that, then we'll take up the issue

2    of the preliminary injunction.

3            Given some other pending matters I have, it's my

4    expectation to have an order on the motion to dismiss within 30

10:56:51    5    days, and then I will move to the preliminary injunction after

6    that, so -- if that issue is still pending before the Court, so

7    just in terms of managing your expectations of when you may hear

8    from me.  So that's my plan moving forward.

9            Any questions?  Mr. Tucker?

10:57:11    10    MR. TUCKER:  No, Your Honor.  I would -- I would just --

11    I appreciate that -- the timing there.  I would just underscore

12    the fact that on the preliminary injunction side, we are

13    attempting to hire those two non-ministerial positions within

14    the fiscal year, if at all possible, but understand the Court's

10:57:29    15    restrictions on its large caseload as well.

16            THE COURT:  And your fiscal year starts in September?

17            MR. TUCKER:  It actually ends June 30th, begins July 1.

18    So that's the -- that's the immediate concern that we have.

19            THE COURT:  All right.  Thank you.

10:57:44    20    Mr. Ward?

21            MR. WARD:  Nothing further, Your Honor.

22            THE COURT:  All right.  I will do my best to move up

23    that timetable, but as I am certain you are aware, we are down a

24    judge here in Eastern Washington, and so that has made the

10:58:00    25    schedule a bit on the hectic side, and so I did move you all up,

1  given this is a preliminary injunction, in terms of prioritizing

2  you over other cases.  I will try to continue to do that, but

3  I'm just trying to manage your expectations moving forward.

4       All right.  I very much -- very much appreciate the

10:58:20  5  helpful and insightful arguments today.  Thank you for making

6  yourselves all available.  I found this very, very helpful.  So

7  thank you all, and that concludes this matter.

8       Court's in recess.

9       MR. TUCKER:  Thank you, Your Honor.

10:58:37  10       MR. WARD:  Thank you, Your Honor.

11       (Hearing concluded at 10:58 a.m.)

76

1                        C E R T I F I C A T E

2

3        I, KIMBERLY J. ALLEN, do hereby certify:

4             That I am an Official Court Reporter for the United

5    States District Court for the Eastern District of Washington in

6    Richland, Washington;

7             That the foregoing proceedings were taken on the date

8    and at the time and place as shown on the first page hereto; and

9             That the foregoing proceedings are a full, true and

10   accurate transcription of the requested proceedings, duly

11   transcribed by me or under my direction.

12             I do further certify that I am not a relative of,

13   employee of, or counsel for any of said parties, or otherwise

14   interested in the event of said proceedings.

15             DATED this 28th day of September, 2023.

16

17

18

19   _____

20   Kimberly J. Allen, CRR, RMR, RPR, CCR(WA)
     Washington CCR No. 2758
21   Official Court Reporter
     Richland, Washington
22

23

24

25

KIMBERLY J. ALLEN, CRR, RPR, CSR
OFFICIAL COURT REPORTER